IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

REINICKE ATHENS INC.,

    Plaintiff,

      v.

    CIVIL ACTION FILE
    NO. 1:16-CV-138-TWT

NATIONAL TRUST INSURANCE
COMPANY A Member of the FCCI
Insurance Group,

    Defendant.

**OPINION AND ORDER**

This is an action seeking to recover on an insurance policy. It is before the

Court on the Defendant National Trust Insurance Company's Motion to Dismiss [Doc.

13]. For the following reasons, the Defendant's Motion to Dismiss [Doc. 13] is

GRANTED.

**I. Background**

The Plaintiff, Reinicke Athens, Inc., is an industrial equipment installation

company. In connection with work performed for SKC described below, it obtained

an Installation Floater insurance policy through the Defendant, National Trust

Insurance Company.[1] The Policy insured Reinicke Athens against "direct physical loss" to an owner's property that Reinicke Athens was installing.[2] The Policy had several important limitations, however. The Policy only covered Reinicke Athens' "insurable interest."[3] Importantly, the Policy stated that "[i]f there is another policy covering the same loss, other than that described above, [National Trust pays] only for the amount of covered loss in excess of the amount due from that other policy..."[4] The Policy also included a Volunteer Payments section, which stated that "[Reinicke Athens] must not, except at [its] own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage."[5]

In October 2013, SKC, Inc. contracted with Reinicke Athens to assist in the delivery of equipment to SKC's facility in Covington, Georgia.[6] As part of the

---

[1]     Compl. ¶¶ 1, 4.

[2]     Joint Stipulation, Ex. A at 49 [Doc. 9-1]. Normally matters outside the pleadings cannot be considered without converting the motion to a motion for summary judgment. Here, however, the parties have agreed to treat the Stipulation's exhibits as part of the pleadings.

[3]     Id. at 58.

[4]     Id. at 59.

[5]     Id. at 57.

[6]     Pl.'s Resp. to Def.'s Mot. to Dismiss, at 1 [Doc. 14].

contract between SKC and Reinicke Athens, SKC was required to maintain its own property insurance. In particular, Section 5.3.1 of the contract stated that "Owner shall procure, pay for, and maintain...property insurance covering the property interest," of SKC and Reinicke Athens, and that Reinicke Athens "is responsible for the first $5,000 of the deductible cost and [SKC] is responsible for the payment of any remaining deductible cost..."[7] In satisfaction of this contractual requirement, SKC obtained an insurance policy with a deductible of $250,000.[8]

While assisting with the installation in December 2013, Reinicke Athens damaged some of SKC's equipment.[9] SKC's insurance policy paid for the damage, but SKC sought reimbursement from Reinicke Athens and National Trust. Upon reviewing the claim, National Trust determined that SKC's insurance was primary, and that Reinicke Athens only owed $5,000 pursuant to the limitation clause in the contract between SKC and Reinicke Athens.[10] Accordingly, National Trust paid out $5,000 on the claim.[11]

---

[7]     Joint Stipulation, Ex. B at 26-27 [Doc. 9-2].

[8]     Compl. ¶ 6.

[9]     Id. ¶ 2.

[10]    Joint Stipulation, Ex. H at 1 [Doc. 9-8].

[11]    Id.

SKC disagreed with National Trust's determination, believing that National Trust and Reinicke Athens owed the full $250,000 deductible, and subsequently refused to pay Reinicke Athens for the work done under the contract until the deductible was paid. As a result, Reinicke Athens filed an arbitration demand against SKC on July 8, 2015, seeking the full contract price.[12] SKC counterclaimed for damages to its equipment.[13] In order to preserve its rights before the expiration of the contractual statute of limitations, Reinicke Athens also filed this action. Both parties agreed to stay these proceedings pending the outcome of the arbitration because National Trust had agreed to defend Reinicke Athens against SKC's counterclaims under a reservation of rights.[14]

In February of 2016, Reinicke Athens and SKC began to negotiate a settlement. Reinicke Athens attempted to get National Trust to participate in the settlement negotiations, but National Trust continued to maintain its position that it owed nothing more than $5,000.[15] Nevertheless, Reinicke Athens and SKC reached a settlement on

---

[12]   Id. at Ex. C, at 1 [Doc. 9-3].

[13]   Id. at Ex. D, at 13-14 [Doc 9-4].

[14]   Id. at Ex. E [Doc 9-5].

[15]   Id. at Ex. F [Doc 9-6].

March 29, 2016 without National Trust's involvement.[16] According to the terms of the settlement agreement, SKC retained its claim against Reinicke Athens for the $250,000 deductible and did not pay that amount to Reinicke Athens. SKC then agreed to pay Reinicke Athens $500,000 for work performed under the contract.[17] Reinicke Athens then filed suit against National Trust in order to recover the $250,000 which SKC withheld under the settlement agreement.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[18] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[19] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[20] Generally, notice pleading is all that is required for a valid

---

[16]   Id. at Ex. G [Doc 9-7].

[17]   Id. at 3.

[18]   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[19]   Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[20]   See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also

complaint.[21] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[22]

## III. Discussion

Insurance contracts are enforced just like any other contract, and the parties involved are "bound by its plain and unambiguous terms."[23] "Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written..."[24] Upon examining the terms of the Policy, it is clear that Reinicke Athens' claim against National Trust is untenable because it settled the underlying claims without National Trust's consent.

In this case, the Policy contained a voluntary payment clause. The voluntary payment clause prohibited Reinicke Athens from settling any claims that might be

---

Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[21]    See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[22]    See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

[23]    Hays v. Georgia Farm Bureau Mut. Ins. Co., 314 Ga. App. 110, 111 (2012) (internal quotations omitted).

[24]    Reed v. Auto-Owners Ins. Co., 284 Ga. 286, 287 (2008).

covered under the contract without first obtaining the consent of National Trust.

Voluntary payment clauses like this are common in insurance contracts as they

"enable insurers to control the course of litigation concerning such claims, and also

serve to prevent potential fraud, collusion and bad faith on the part of insureds."[25]

These clauses have been consistently upheld in Georgia, as long as the insurer fulfills

its duty to defend the insured when possible.[26] National Trust had agreed to defend

Reinicke Athens in the arbitration against SKC's counterclaims under a reservation

of rights, but Reinicke Athens settled anyway. While there may have been a legitimate

argument that National Trust was in fact obligated to pay more than $5,000, by

settling, Reinicke Athens never gave National Trust the opportunity to litigate that

issue.[27] Under the terms of the Policy, Reinicke Athens did so at its own risk.

     Reinicke Athens makes four arguments as to why the voluntary payments

clause does not apply here, each of which is unpersuasive. First, Reinicke Athens

---

[25]    Southern Guaranty Ins. Co. v. Dowse, 278 Ga. 674, 676 (2004).

[26]    See id. ("In Georgia, an insurer that denies coverage and refuses to defend an action against its insured, when it could have done so with a reservation of its rights as to coverage, waives the provisions of the policy against a settlement by the insured..."). See also Trinity Outdoor, LLC v. Central Mut. Ins. Co., 285 Ga. 583, 585-87 (2009) (expounding upon the opinion in Dowse).

[27]    On that note, because Reinicke Athens violated the voluntary payment clause of the Policy, the Court does not reach the issue of whether National Trust's interpretation of the contract between Reinicke Athens and SKC was correct.

attempts to distinguish between property insurance, including the Installation Floater, and general liability insurance, but provides absolutely no law to support its argument. Second, the Plaintiff argues that the voluntary payment clause does not apply to the Installation Floater because the Installation Floater does not "require that the insured establish that it is legally obligated to pay before the carrier's coverage obligation is triggered."[28] But this is simply incorrect. Page 11 of the Installation Floater states that "[National Trust] do[es] not pay for more than [Reinicke Athens'] insurable interest in any property." Reinicke Athens' insurable interest in the property of another is only that which it would be legally obligated to pay resulting in a loss to itself. But in any event, regardless of whether the Policy only covered that which Reinicke Athens was legally obligated to pay, Reinicke Athens has failed to show any reason why that would affect the validity or applicability of the voluntary payment clause.

Third, the Plaintiff argues that it never made a "payment" to trigger the clause because it actually "received a substantial sum" as a result of the arbitration.[29] But the terms of the settlement state that SKC was withholding $250,000 in satisfaction of its claim that would have otherwise been paid to Reinicke Athens. The Plaintiff cannot

---

[28]    Pl.'s Resp. to Def.'s Mot. to Dismiss, at 7-8.

[29]    Id. at 9.

have its cake and eat it too. Either the $250,000 withheld under the terms of the settlement was not a payment, in which case the Plaintiff has suffered no loss, and therefore does not have a claim under the Policy. Or it is a payment and implicates the voluntary payment clause. The Court is of the latter view, but either perspective counsels dismissal.

Finally, the Plaintiff argues that even if the voluntary payment clause does apply, National Trust should be estopped from relying on it because it failed to defend Reinicke Athens in the arbitration, pursuant to the exception laid out in Dowse. But Dowse dealt with a situation in which the insurer completely refused to defend the insured. As the Georgia Supreme Court explained in Trinity Outdoor, the insurer in Dowse "refused to defend or indemnify the insured *at all*..."[30] In this case, National Trust did agree to defend Reinicke Athens under a reservation of rights. The fact that the Defendant's counsel did not contact Reinicke Athens for 30 days does not indicate a complete refusal to defend Reinicke Athens,[31] and Reinicke Athens  has cited no case law to suggest otherwise.

---

[30]    Trinity Outdoor, 285 Ga. at 586.

[31]    Cf. State Farm Fire & Ca. Co. v. King Sports, Inc., 827 F. Supp. 2d 1364, 1380 (N.D. Ga. 2011) (holding that an insurer's refusal to appoint new counsel after previous counsel resigned from the case did not vitiate insurer's indemnity under voluntary payment clause).

National Trust also moves to dismiss the Plaintiff's claim for bad faith denial of an insurance claim. In Georgia, an insurer can be liable for fifty percent of the covered loss plus attorney fees if the insurer refuses to pay a claim in "bad faith," defined as a frivolous or unfounded refusal to pay.[32] "Ordinarily, the question of good or bad faith is for the jury, but when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties."[33] Without deciding whether National Trust's interpretation was ultimately correct, the Court finds that the Defendant had a reasonable basis for believing that Reinicke Athens' maximum liability was only $5,000. The language of the contract between Reinicke Athens and SKC clearly states that Reinicke Athens is only responsible for the first $5,000 of SKC's deductible, but whether SKC's insurance policy or the Policy with National Trust was primary was an open question. Because there was an open question, National Trust's denial was not frivolous or unfounded, and the bad faith claim must also be dismissed.

In short, because Reinicke Athens voluntarily settled its arbitration with SKC without obtaining National Trust's consent, Reinicke Athens released its claims under

---

[32]     See O.C.G.A. § 33-4-6(a); King v. Atlanta Cas. Ins. Co., 279 Ga. App. 554, 556 (2006).

[33]     International Indem. Co. v. Collins, 258 Ga. 236, 237 (1988).

the Policy. And because National Trust had a reasonable basis to deny coverage, the Plaintiff's bad faith claim must also fail. As such, the Plaintiff's claims should be dismissed.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion to Dismiss [Doc. 13] is GRANTED.

SO ORDERED, this 5 day of April, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge